**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| QUINTON LATORES BATTLES, | ) | |
| | ) | |
| Defendant/Movant, | ) | |
| | ) | 5:02-cr-00546-IPJ-JEO |
| | ) | 5:04-cv-08013-IPJ-JEO |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

The defendant, Quinton Latores Battles, has filed a motion pursuant to 28 U.S.C. § 2255 wherein he challenges both the conviction and sentence he received in 2003 on three counts of drug trafficking and one count of possessing a firearm in furtherance of a drug trafficking crime. Specifically, he challenges the legality of his sentence, the effectiveness of his counsel, and his plea agreement. For the reasons stated below, his motion is due to be denied.

**BACKGROUND**

The defendant was indicted on December 2, 2002, in a four-count indictment. (Doc. 1).[1] Count One charges him with knowingly possessing five grams or more of "crack" cocaine with the intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Count Two charges him with knowingly possessing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(I). Count Three charges him with knowingly possessing fifty grams or more of "crack" cocaine with the intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). Count Four charges him with knowingly possessing fifty grams or

---

[1]References to "Doc. __" are to the documents as numbered by the clerk of the court in the court's record of the case.

more of cocaine hydrochloride with the intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).[2]

The defendant entered into a plea agreement with the United States on January 28, 2003. (Doc. 8).  The plea agreement provides that, in return for a guilty plea to all four counts of the indictment, the United States would recommend (1) that Battles receive credit for acceptance of responsibility and (2) that he be sentenced at the low end of the applicable Sentencing Guidelines[3] range.  (*Id.* at p. 1).  The agreement also provides that the United States would afford Battles an opportunity to cooperate with law enforcement authorities in an effort to render substantial assistance in the prosecution of others.  (*Id.*).  Finally, the agreement provides that Battles waived his "right to appeal his conviction(s) and sentence and to challenge his conviction and sentence pursuant to 28 U.S.C. § 2255."  (*Id.* at p. 7).

A guilty plea hearing was conducted on January 28, 2003.  (Doc. 20).  At that hearing, the court reviewed the indictment with the defendant and conducted a colloquy to ensure the defendant understood the terms of the plea agreement.  (*Id.* at pp. 6-14).  The court specifically covered his waiver of his right to appeal the conviction and sentence that was included in the agreement.  (*Id.* at p. 13).  The Assistant United States Attorney restated the recommendation contained in the plea agreement and reiterated the language dealing with the possibility of a downward departure under U.S.S.G. § 5K1.1, saying that "at this time we do not expect to do that, but [the government] would like to leave the language in the plea agreement and leave that option open for the defendant between now and sentencing, if the Court so agrees."  (*Id.*).  The

---

[2]At the plea colloquy, the court amended count four to reflect a charge of § 841(b)(1)(C) to correct a clerical error.

[3]At the time of Battles' sentencing, the U.S. Sentencing Guidelines were still binding on the court.

court outlined the elements that the government would be required to prove if the case went to

trial (*id*. at pp. 15-16), and reviewed with the defendant the various rights he was giving up by

pleading guilty.  (*Id*. at pp. 16-17).  The defendant affirmed that he understood the elements of

the charges against him (*id.* at pp. 15-16) and that he was satisfied with the advice of his counsel

(*id*. at pp. 4-5).  Additionally, the court informed the defendant that, if it accepted his guilty plea,

it was not required to follow the sentencing recommendations contained in the plea agreement.

(*Id*. at pp. 12-13).  Finally, the defendant pled guilty to all four counts of the indictment.  (*Id*. at

pp. 18-19).  The court then elicited from the United States the factual basis for the plea:

> [T]he government would expect to prove that, on October 30th of [2002], the Huntsville Police Department got a search warrant to search the defendant's car and his house.  The next morning, they started surveillance on his house, and they waited for him to leave in his car, the car that was named in the search warrant.
>
> When he did that, they got behind him and initiated a traffic stop.  At that time the defendant was taken into custody, his car was searched, and they did find the forty caliber weapon that's described in the indictment.
>
> They then took the defendant to his home, the same home that was named in the search warrant.  Once there, they did search the defendant's person and his home.  In his home they found two hundred and forty grams of crack cocaine. They found five hundred and ten grams of cocaine hydrochloride or powder cocaine.
>
> On the defendant's person, they found fourteen grams of crack cocaine. They also found twenty-one thousand dollars in cash, a set of digital scales, a small quantity of marijuana.  And Your Honor, they found other drug paraphernalia in the home.
>
> The defendant was interviewed later, and he did tell members of law enforcement that the money found in his house was money from drug proceeds. That he would get powder cocaine from an individual in Atlanta, and bring it back to his home where he would convert it to crack cocaine.  And the powder cocaine that was there was some powder cocaine that he intended to convert to crack cocaine.  That's what we would expect the evidence to show.

(*Id*. at pp. 19-21).  The court then accepted the defendant's guilty pleas.  (*Id*. at 21).

On April 30, 2003, Battles was sentenced to151 months imprisonment for each of the three drug trafficking charges, with each to be served concurrently, and 60 months for the firearm charge, to be served consecutive to the sentence on the drug charges.  (Doc. 20 at pp. 26-28). The defendant did not appeal his conviction or sentence.

The Clerk of the Court received the defendant's motion to vacate, set aside, or correct the sentence on May 10, 2004.  (Doc. 16).  The defendant filed a memorandum in support of his motion on June 10, 2004 (doc. 21), and the United States, after receiving an extension, filed a motion to dismiss on June 25, 2004 (doc. 22).  The defendant filed a reply on July 8, 2004.  (Doc. 24).  He next filed an amendment to his § 2255 motion on August 12, 2004.  (Doc. 26).

## DISCUSSION

The defendant initially raises six claims in support of his § 2255 motion.  (Doc. 21). However, in his memorandum, he abandons his claim that counsel failed to appeal the conviction and sentence, "conceding that counsel's failure to file a notice of appeal cannot be shown as being prejudicial."  (*Id*. at p. 5).  Read liberally, the defendant's claims are as follows: (1) counsel was ineffective in failing to object to the government's breach of the plea agreement by failing to file a motion for downward departure under U.S.S.G. § 5K1.1;[4] (2) counsel was ineffective in that he failed to assist the petitioner in obtaining a § 5K1.1 departure;[5] (3) counsel was ineffective in that he failed to adequately inform the defendant of the potential maximum

---

[4]The defendant lists this as "Issue Number Three" in the memorandum even though it precedes "Issue Number Two." (Doc. 21 at p. 5).

[5]This is "Issue Number Two" in the memorandum.  (Doc. 21 at p. 6).

penalties under the Sentencing Guidelines;[6] (4) counsel failed to inform him of the critical

elements of the firearms charge against him, and, as a result, Battles' guilty plea was not

voluntary, knowing, or intelligent;[7] and, (5) counsel failed to object to his sentencing range after

it was improperly increased, contrary to U.S.S.G. § 1B1.8(a), when the Probation Office

converted a quantity of cash seized at the time of Battles' arrest ($21,000.00) into an equivalent

weight of cocaine powder for sentencing purposes.[8]  (Doc. 21).

     The United States initially asserts that all of these issues are barred from review in this §

2255 proceeding because the defendant knowingly and voluntarily waived his right to pursue

relief in a § 2255 proceeding as a part of his guilty plea.  (Doc. 22).  The government did not

address the merits on any of Battles' claims, but has requested leave to respond substantively in

the event that its motion to dismiss is denied.[9]  (*Id*.).  Although only two of Battles' claims may

not be barred by his waiver, an additional response from the government is unnecessary for the

reasons discussed below.

## DISCUSSION

     Battles' first, second, and fifth claims (no downward departure and the conversion of the

recovered money to a drug equivalent) raise issues that specifically call into question the

legitimacy of his sentence.  His third and fourth claims (not being properly informed of the

---

[6]This is "Issue Number Four" in the memorandum.  (Doc. 21 at p. 10).

[7]This is "Issue Number Five" in the memorandum.  (Doc. 21 at p. 13).

[8]This is "Issue Number Six" in the memorandum.  (Doc. 21 at p. 17).

[9]At this stage, it is entirely appropriate for the government to make such a request.  To require a brief on the merits of a potentially waived habeas claim at the outset would "deprive[] the government of the benefit that it has bargained for and obtained in the plea agreement concerning the sentence waiver."  *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997).

potential maximum sentence and the elements of the offense) pertain to the validity of his guilty plea.  Accordingly, the court will dispose of the former claims premised on the defendant's valid waiver and will address the latter claims on the merits.

### Waiver

As just noted, the defendant's first, second, and fifth claims are barred from review in this § 2255 proceeding because he waived his right to raise them when he signed the "waiver" contained in the plea agreement.  It is well-settled that a knowing and voluntary waiver of the right is generally enforceable.  In *United States v. Bushert*, 997 F.2d 1343 (11th Cir. 1993), the court stated:

> In order to prevail in its argument [that a defendant has knowingly and voluntarily waived his right to appeal a sentence] . . .  [t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver.

*Bushert*, 997 F.2d at 1351 (footnote omitted).  Therefore, if the government proves either of the two elements of the *Bushert* test, an appeal of the defendant's sentence is precluded.

Battles' plea agreement contained the following language under the heading "Waiver of Right To Appeal":

> Defendant's right to an appeal and his right to file a motion pursuant to 28 U.S.C. § 2255 have been explained to him and he understands those rights.  As a part of this plea agreement, Defendant knowingly, intelligently, and voluntarily waives his right to appeal his conviction(s) and sentence and to challenge his conviction and sentence pursuant to 28 U.S.C. § 2255.

(Doc. 8 at p. 7).  Immediately below this paragraph is the defendant's signature.  At the Rule 11 plea hearing, the court conducted the following colloquy with the defendant:

6

THE COURT: Do you also understand that, pursuant to the plea agreement that you have signed, you have given up and waived your right to appeal your conviction and sentence and to challenge the conviction and the sentence pursuant to 28, U.S. Code, Section 2255, as well?

THE DEFENDANT: Yes, Your Honor.

. . . .

THE COURT: Do you understand that, if you enter a plea of guilty, you give up the right – all of these rights that I've listed for you, except the right to have constitutionally adequate counsel to represent you on an appeal if an appeal is necessary?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Okay.  But you do understand in this case that you have waived your right to appeal the sentence?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And the conviction, as well?

THE DEFENDANT: Yes, Your Honor.

(Doc. 20 at pp. 13, 16 & 17).  Because the court explicitly addressed the sentence appeal waiver with the defendant at the colloquy, the first prong of the *Bushert* test has been met.  Accordingly, the defendant is barred from raising any issues challenging his sentence.

Battles' first and second claims, that the government breached its obligation under the plea agreement by failing to move for a downward departure and counsel failed to assist him in obtaining a downward departure, concern his sentence.  *See* U.S.S.G. § 5K1.1.  Due to the fact that these claims directly challenge his sentence, Battles is barred from raising them because he specifically waived his right to do so as discussed above.  *See United States v. Benitez-Zapata*, 131 F.3d 1444, 1446-47 (11th Cir. 1997) (holding that an appeal of "the government's refusal to

7

make a 5K1.1 motion for downward departure" is barred by an effective waiver of the defendant's right to appeal his sentence); *see also Buchanan*, 131 F.3d at 1009 (holding that other challenges to the Sentencing Guidelines are also barred from review in the face of a valid sentence appeal waiver).  If these claims were examined as Battles originally phrased them in the ineffective assistance of counsel context, they would still be precluded.  In *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005), the Eleventh Circuit joined numerous other courts in holding that "a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing."

Even if the waiver in this case was not valid, these challenges would still fail to pass muster.  The crux of the defendant's argument is that he stood willing and ready to cooperate in a controlled drug buy and to assist the government in apprehending other drug dealers, and by refusing to act on this offer, the United States breached its end of the plea agreement.  (Doc. 21 at p. 6 & Attached Exhibit A (hereafter "Affidavit") at p. 2).  However, this argument ignores the plain language of the plea agreement that states that "[t]he United States is not required to accept any cooperation or assistance that the defendant chooses to proffer."  (Doc. 8 at p. 6).  Additionally, the prosecutor informed the court and the defendant at the plea hearing that she did not expect there to be a § 5K1.1 downward departure.  (Doc. 20 at p. 13).  Thus, a plain reading of the plea agreement and the hearing transcript reveals that the government's actions in this case do not violate the agreement and counsel has not been shown to be ineffective.  This is particularly true in view of the defendant's conclusory claim that he was "willing and able to cooperate with the government in this case as provided by the plea agreement in order to achieve

a reduced sentence" and his delay in asserting this allegation.[10]  (Doc. 21 at p. 6).

In his fifth claim, Battles alleges that his presentence investigation report improperly converted $21,000.00 in cash seized at the time of his arrest to a quantity of drugs when calculating his sentencing range.  At the sentencing hearing, the district judge adopted the factual statements and specific findings within the presentence report, without objection from either side. (Doc. 20 at p. 24).  Battles claims that he admitted that the $21,000.00 were proceeds from his drug trade only in pursuit of a § 5K1.1 motion.  (Doc. 21 at p. 19).  He correctly points out that § 1B1.8(a) of the Sentencing Guidelines generally prohibits the use of self-incriminating statements made pursuant to a cooperation agreement.  (*Id*. at p. 17).  The record, however, does not reflect whether Battles' admission that the proceeds were from drug sales was made before or after he entered into his plea agreement.  However, a hearing is not necessary on this issue because, as before, this claim challenges the calculation and duration of his sentence, which has been effectively waived under the circumstances.  *See also Buchanan*, 131 F.3d at 1008-09 (valid appeal waiver precluded review of "[w]hether the Court erred in failing to make findings regarding controverted quantities of drugs attributable to the Appellant"); and *United States v. Pease*, 240 F.3d 938, 942 (11th Cir. 2001) ("[A] district court's determination of the amount of drugs attributable to [a defendant] for purposes of sentencing. . . . falls squarely within [a

---

[10]In his affidavit, the defendant states:

In my discussions with [defense counsel], I asked him on a number of occasions about my cooperation and what I needed to do.  He told me that the government would let me know.  I told [defense counsel] that I was willing to set up some buys for the government from "Prowler" to aid them.  [Defense Counsel] told me that he would check with the government.  I never was told by my attorney or anyone else about what I could do to help the government nor did [defense counsel] ever get back with me about my offer to do a controlled buy from "Prowler" even though I asked him about this at least 3 times.

(Ex. A at p. 2).  The defendant, however, did not mention this at his sentencing and waited over one year before submitting the foregoing information in an affidavit.

knowing and voluntary] appeal waiver.").

In two subsequent amendments to his § 2255 motion, Battles has also attempted to challenge his sentence enhancements under *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 1403 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Battles' sentence was imposed before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). To the extent that the defendant's challenges turn on application of *Blakely/Apprendi*, *Booker* would now control. However, the Eleventh Circuit has held that "*Booker's* constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to § 2255 cases on collateral review." *Varela v. United States*, 400 F.3d 864, 868 (11th Cir. 2005); *see also Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004). Therefore, because Battles has first raised this issue on collateral review, his motion for consideration under *Booker/Apprendi* is due to be denied.

In sum, the evidence shows that the defendant knowingly and voluntarily waived his right to appeal and further challenge his sentence. Because these claims raise challenges to his sentence (or to the effectiveness of his counsel at sentencing) he is barred from raising them at this juncture. Accordingly, they do not entitle the defendant to any relief.

### The Merits of the Remaining Claims

The third and fourth claims raise two closely-related issues of ineffective assistance of counsel concerning events occurring at the time the defendant entered into his plea agreement and not during his sentencing process. The Eleventh Circuit has not directly addressed whether a valid, specific waiver such as the one executed in this case will preclude an ineffective assistance

10

of counsel claim that directly relates to the voluntary, knowing, and intelligent nature of the decision to plead guilty.  *See Williams*, 396 F.3d at 1342 n.2 ("[T]here may be a distinction between a § 2255 claim of ineffective assistance in entering or negotiating the plea versus a claim of ineffectiveness at sentencing").  Assuming for the sake of argument that the defendant's third and fourth claims are not covered by the waiver, they are both nevertheless due to be denied.

To prevail on any claim of ineffective assistance of counsel, a defendant must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different."  *Hill v. Lockhart*, 474 U.S. 52, 57, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985) (quoting and applying *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2053, 80 L. Ed. 2d 674 (1984), to "challenges to guilty pleas based on ineffective assistance of counsel").  While the failure of an attorney to inform his client of the "relevant law" may satisfy the first prong of the *Strickland* test, *see id.* at 62, that determination would, in most cases, be most appropriately made after a hearing.  *See, e.g., Yordan v. Dugger*, 909 F.2d 474, 478 (11th Cir. 1990) ("The district court should first determine whether the facts alleged in the appellant's petition, if true, would warrant relief under *Hill*.  If, . . . , the appellant surmounts this threshold burden, the district court should order an evidentiary hearing on the merits of the ineffective assistance claim.").  However, *both* elements of *Strickland* must be met for a defendant to prevail on his ineffective assistance claim.  *Hill*, 474 U.S. at 59.  "In order to satisfy the 'prejudice' requirement, the defendant must show there is a reasonable probability that, but for the counsel's errors, he would not have pled guilty and would have insisted on going to trial."  *Id*.  Therefore, if the prejudice requirement is not met, a claim

11

may be properly disposed of, under *Strickland*, without a hearing on the merits.

In his third claim, the defendant asserts that his counsel failed to advise him of the true consequences of his guilty plea.  The crux of this claim is that he would not have entered into the guilty plea if he had known that he could face a sentence of 211 months.  In essence, he asserts that he relied upon his counsel's prediction of a lesser sentence to his detriment.  Essentially, he argues that this prediction prevented him from entering his plea agreement "knowingly".[11]  *See Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (to be effective, a guilty plea must be made knowingly and voluntarily).  However, assuming that his counsel did mischaracterize the expected sentence,[12] Battles has still failed to show that he was prejudiced by his counsel's misstatement or omission.

The penalty page of Battles' indictment clearly states that count three carried a minimum sentence of 120 months (with a maximum of life imprisonment) and that count two carried a minimum sentence of 60 months that could not be served concurrent with any other sentence. (Doc. 1).  Before he entered the courtroom for his plea hearing, the defendant signed a "Guilty Plea Advice of Rights Certification" that stated, in part, "I understand the mandatory minimum sentence provided by law. . . and the maximum penalty provided by law. . . . [,that] the court is not bound by the plea agreement [with respect to any sentencing recommendation contained therein, and that] the court may sentence me to the same punishment as if I had been convicted

---

[11]This is the only reading of the defendant's third claim that warrants consideration.  Any other interpretation would hinge upon his sentence, which the defendant waived his right to appeal or otherwise collaterally challenge as discussed above.

[12]There is nothing in the record, save the affidavit of the defendant, to suggest that the trial counsel did lead Battles to believe that his sentence would be something less than what he ultimately received.  Even if a hearing were convened on this matter, the situation would likely be one of the lawyer's word against Battles' – one that is incapable of purely objective resolution.

by a jury." (Doc. 7 at pp. 2-4). During the Rule 11 colloquy, after discussing the minimum and maximum sentences for each of the charges in detail (doc. 20 at pp. 8-12), the court asked as follows:

> THE COURT: . . . Do you understand that, if you plead guilty, you can be sentenced to the same punishment as if you had been convicted by a jury?
>
> THE DEFENDANT: Yes, Your Honor.

(*Id*. at p. 17). Thus, the defendant was properly made aware of the range of punishment he was facing by entering a guilty plea and he affirmatively indicated that he was aware of the range of punishment. Thus, if he then truly relied on a prediction by his attorney of a lesser sentence, he did so only by consciously disregarding the range of punishments he already knew about and what the court told him. Accordingly, the defendant is not entitled to any relief. It is not enough for the defendant to simply assert that he would have changed his mind but for counsel's purported representations. The claim is due to be denied because the defendant has not shown that he was prejudiced by his lawyer's supposedly spurious sentence prediction.

Finally, in his fourth claim, the defendant asserts that counsel failed to adequately inform him about a key element of his firearm charge. He suggests that, had he known that 18 U.S.C. § 924(c)(1)(A)(I) requires that the firearm be used in furtherance of the drug trafficking offense, he would not have plead guilty. Specifically, he claims that his firearm was not used in furtherance of his drug trafficking endeavors. Otherwise stated, he avers that his plea was not voluntary because he was unaware of a specific element of the crime charged against him. The defendant is correct in pointing out that something more than the "mere presence" of a firearm is necessary to meet the elements of 924(c)(1). *See, e.g., United States v. Poole*, 878 F.2d 1389, 1393 (11th

13

Cir. 1989).  What is at issue at this juncture is whether the defendant's guilty plea should be invalidated if his counsel failed to inform him about the "in furtherance" element of 924(c)(1) before he entered the same.

"A plea may be involuntary . . . because [the accused] has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." *Gaddy v. Linahan*, 780 F.2d 935, 943 (11th Cir. 1986).  In this sense, a plea is not voluntary, "unless the defendant received 'real notice of the true nature of the crime against him.'"  *Id.* (quoting *Henderson v. Morgan*, 426 U.S. 637, 645 n.13, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976)).  "[A] defendant receives 'real notice' of the charge when he has been informed of both the nature of the charge to which he is pleading guilty and its elements . . . .  In addition, the defendant should understand how his conduct satisfies those elements."  *Gaddy*, 780 F.2d at 943-44.  This "notice" requirement is met whenever the accused learns of the nature and elements of the charge against him.  *Id.* at 944.  "Thus, for a plea to be knowing and voluntary, the defendant must be informed of the elements of the offense either at the plea hearing or on some prior occasion, and he must understand them."  *Id.*  Otherwise stated, in order to prevail on this claim, the defendant must show that he never learned of the "in furtherance" element at any time before entering his guilty plea, and that he was therefore prejudiced by his reliance on counsel's supposed failure to educate him about that element.  He has failed to show such prejudice.

As was the case on the last claim, Battles was effectively put on notice of this element by the language of the indictment and by the court during his plea colloquy.  The indictment alleged that Battles "did knowingly possess a firearm . . . in furtherance of a drug trafficking offense for

14

which he may be prosecuted. . . ."  (Doc. 1 at p. 1).  At the Rule 11 colloquy, the court read the

indictment aloud and then had the following exchange with the defendant:

> THE COURT: . . . Now, I want to make sure that we're on the same page.  You
> understand that those are the offenses with which you are charged?
>
> THE DEFENDANT: Yes, Your Honor.
>
> . . . .
>
> THE COURT: And with respect to the firearm, [do you understand that] the
> government would have to prove that on that day, on or about that day, in that place,
> you knowingly possessed a firearm, that is the Smith and Wesson forty caliber
> semi-automatic pistol, in furtherance of the drug trafficking offense that you were
> charged with in Count Number One?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Okay.  Do you understand that you cannot be convicted of these
> offenses unless the government proves your guilt beyond a reasonable doubt?
>
> THE DEFENDANT: Yes, Your Honor.

(Doc. 20 at pp. 8, 16).  The defendant asks this court to believe that, if only his lawyer had again

reiterated what was already known to him, he would have refused to plead guilty and take his

chances with a jury.  The court finds this to be insufficient to warrant relief.  The record shows

that he was aware of this element of the offense and that he has failed to reasonably show that he

was prejudiced by the purported failure of his counsel to mention that which he already knew.

To the extent the defendant suggests that the court's use of the phrase "in furtherance"

was not enough to educate him about the required "nexus between the firearm and the facilitation

of the drug transaction," the court disagrees.  (Doc. 21, p. 13).  While the court again notes that

something more than mere possession of a firearm is necessary for conviction under 924(c)(1), it

fails to see how the defendant can claim to be unaware of this fact after he acknowledged that he

understood that the government would have to prove that the gun was possessed in furtherance of the drug crime.  This is not a complex legal concept and is easily understood.  No further discussion was necessary under the circumstances.

The purported failure of counsel to explain the "in furtherance" element of 924(c)(1) to the defendant does not meet the prejudice requirements to support an ineffective assistance claim given the notice and acknowledgment to this court at the plea colloquy.  The Eleventh Circuit Court of Appeals has stated the following concerning the necessary connection between a weapon and the drug activity:

> Thus, the plain meaning of § 924(c), uncontradicted by the accompanying legislative intent, dictates that the presence of a gun within the defendant's dominion and control during a drug trafficking offense is not sufficient by itself to sustain a § 924(c) conviction.  As the Second Circuit explained in *United States v. Finley*, 245 F.3d 199, 202 (2d Cir. 2001), there must be "a showing of some nexus between the firearm and the drug selling operation." *Id.*  The nexus between the gun and the drug operation can be established by "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to the drugs or drug profits, and the time and circumstances under which the gun is found." *Ceballos-Torres*, 218 F.3d at 414-15; *accord Mackey*, 265 F.3d at 462.  While these factors are not exclusive, they "distinguish possession in furtherance of a crime from innocent possession of a wall-mounted antique or an unloaded hunting rifle locked in a cupboard." *Id*.

*United States v. Timmons*, 283 F.3d 1246, 1253 (11th Cir.), *cert. denied*, 537 U.S. 1004, 123 S. Ct. 516, 154 L. Ed. 2d 401 (2002).  Under the present facts, the record is adequate to support the conviction.  The defendant was involved in drug trafficking in that law enforcement officers recovered two hundred and forty grams of crack, $21,000.00, digital scales, marijuana, and drug paraphernalia at his residence.  They recovered fourteen grams of crack and a forty caliber

16

weapon on his person.[13]

## CONCLUSION

The defendant's first, second, and fifth claims are precluded from review by his valid waiver. His third and fourth claims are without merit. Accordingly, his motion is due to be denied. An appropriate order will be entered.

**DONE**, this the 23rd day of March 2006.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE

---

[13]The defendant now seeks to challenge the sufficiency of the evidence by stating that he did not have the drugs on him when he possessed the weapon. He explains this by stating that after the gun was found and he was arrested, he was taken to his residence where he was placed on his couch. (Ex. A at ¶ 2). Remembering that he had stored drugs in the couch, he "retrieved the drugs and hid them in [his] pants" where they were later recovered. (*Id*.). The defendant asserts that he thought that because he had been searched already, the agents would not search him again. (*Id*.). The defendant's challenge to the evidence comes too late particularly in view of the court's colloquy with him.